HENRY S. DULANEY ET AL., TRUSTEES, *vs.* HENRY A. DEVRIES ET AL.

*Contract by the Trustees of a Lunatic Relating to His Estate—Specific Performance—Evidence.*

Specific performance of a contract by which the trustess of a lunatic agreed to charge his property with the payment of money advanced for his support will not be decreed unless it be established that the contract alleged was actually made, that if made it was one which the Court would have authorized at the time if had been in possession of all the facts and circumstances, and that the money sought to be recovcovered was advanced upon the faith of the contract.

A bill alleged that the two trustees of a lunatic had received from a firm, of which one of the trustees was the managing director, a sum of money to be expended in the support of the lunatic under an agreement that his undivided interest in certain real and personal property should be made responsible for the debt.   The bill asked that the agreement be declared to create an equitable lien upon such property and that the interest of the lunatic therein be sold and the proceeds applied to the payment of the debt.   The contract was never reported to, or ratified by, a Court of equity, and one of the trustees, who was the said managing director, had wasted and misapplied a large estate belonging to the lunatic.   *Held*, that the evidence fails to show that the alleged contract was made by the trustees with the firm.

*Held*, further, that even if the contract had been made and the money had been advanced on the faith of it, it would not have been authorized by the Court of equity having jurisdiction over the estate of the lunatic, if the trustees had made a full disclosure of all the facts connected with their management of the trust and of the condition of the estate at that time.

Appeal from the Circuit Court for Baltimore County (Fowler, J.)

The cause was argued before McSherry, C. J., Page, Boyd, Pearce, Schmucker, Jones and Burke, JJ.

*R. E. Lee Marshall, Joseph C. France, Francis T. Homer,* and *James McEvoy, Jr.,* for the appellants, submitted the cause on their brief.

*Randolph Barton* (with whom was *Bernard Carter* on the brief ), for the appellees.

Burke, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County dismissing the bill of the appellants which sought to have the contract alleged in the bill recognized as a valid and subsisting obligation, and to have the personal estate of Samuel K. George Devries, deceased, applied to the payment of a debt which it is alleged was due under the said contract by the deceased to the plaintiffs, and that the interest of said deceased in certain real estate mentioned in the bill might be sold, and the proceeds thereof applied to the payment of so much of said debt as might remain unsatisfied after the application of said personal estate to the payment of said debt.

The debt alleged to be due by the deceased to the plaintiffs, as of the 6th day of February, 1904, is $17,290.83.

The position of the plaintiffs is that the contract set forth in the bill should be treated as an equitable lien upon the real and personal property of the deceased therein mentioned, and · that the Court should recognize and enforce said contract by granting the specific relief sought by the bill.

A brief statement of some of the more prominent facts and circumstances in the history of events which gave rise to this litigation would make more easy the decision of the issues raised by the pleadings.

William Devries, of Baltimore City, died in November, 1877. At the time of his death he was the head of the firm of William Devries & Company, a large and successful dry goods firm, whose place of business was located on Baltimore street. The members of this firm consisted of himself, William R. Devries, a son, and Christian Devries.

William Devries left surviving him six children, three sons and three daughters, who were his only heirs-at-law and next of kin. His sons were William R. Devries, Samuel K. George Devries, and Henry A. Devries. His daughters (using their married names) were Grace G. Tuck, Belle D. Goodwin, and Eliza Boynton.

Samuel K. George Devries and William R. Devries died before the institution of this suit.

William R. Devries left surviving him three children, who were made defendants to the bill of complaint, and whose names are Lydia Whitridge, Mary Frick, and William Devries.

Henry A. Devries, the only surviving son of William Devries, is made a party defendant as the administrator of Samuel K. George Devries.

William Devries died intestate, seized and possessed of a large real and personal estate situated in Baltimore City and Baltimore County. Letters of administration upon his estate were granted to Christian Devries, who accounted for and distributed the personal estate in the Orphans' Court for Baltimore County, and who also as trustee, appointed under appropriate equity proceedings, sold all the real estate of said deceased, except the property known as "The Pill Box Farm" located in Baltimore County.

Shortly after the death of William Devries, Samuel K. George Devries was, by an inquisition had in the Circuit Court for Baltimore County, found to be a *non compos mentis*,

and by an order of that Court, passed on the 17th day of December, 1877, Christian Devries and Henry A. Devries, were appointed committee of the person and trustees of the estate of said lunatic. They each qualified under their appointment, and assumed the discharge of the trust. Samuel K. George Devries was a member of the firm of Devries, Young & Company.

Upon their qualification as committee and trustees of said lunatic, it was agreed between them that Henry A. Devries should look after the personal wants and comfort of said lunatic, and that Christian Devries should have entire charge of his property and estate, and attend to the investment of all funds of the lunatic coming into their hands as trustees.

A large estate, to which Samuel K. George Devries was entitled from the estate of his father and as a member of the firm of Devries, Young & Company, passed into the hands of his trustees.

It appears from the "Plaintiff's Exhibit X," that on June the first, 1884, the net balance which should have been in the hands of the trustees of the lunatic on that date was $60,504.82. Subsequently, to-wit, in 1886, the warehouse property belonging to the estate of William Devries was sold, and the share of the lunatic in the net proceeds of sale was $14,004.20. In 1895 the property of William Devries located on Charles street was sold, and the share of the lunatic was ascertained by the auditor's account to be $2,274.73. In addition thereto there was to the credit of the lunatic in the Eutaw Savings Bank the sum of $949.

Allowing $6,000, a most liberal allowance, for the maintenance of the lunatic from June the 1st, 1884, to April the 1st, 1887, the date when the first charge on the account sought to be recovered in this case was made, there ought to have been in the hands of the trustees, as principal, belonging to the estate of Samuel K. George Devries at the time the alleged contract was entered into, the sum of $68,509.02.

But the bill alleges "that in or about the year 1887 practically the only property or estate then belonging to, or owned

by said lunatic consisted of the right and interest of the said lunatic, as one of the heirs-at-law and distributees of his said deceased father, in and to certain real and personal property, being a part of the estate of his said father; said property consisting of 28 shares of the capital stock of the Peabody Heights Company, a corporation incorporated under the laws of the State of Maryland, and a certain tract or parcel of land, containing 198 acres, more or less. The interest of said lunatic in said real and personal property being a one undivided one-sixth interest therein."

What had become of the large amount of money which the testimony shows to have passed into the hands of the trustees? How had it been dissipated and lost?

An examination of the evidence will disclose a most lamentable case of mismanagement of the trust funds, and an utter disregard of duty on the part of Christian Devries, and at the same time will aid us in fixing the value of his testimony in support of the contract alleged in the bill.

Upon the dissolution of the old firm of William Devries & Company, in 1877, by the death of William Devries a new partnership was formed, trading under the old firm name of William Devries & Company, to carry on the business in which the former firm had been engaged.

This partnership was subsequently renewed. It was composed of Christian Devries, and the five children of William Devries, deceased, viz. : William R. Devries, Henry A. Devries, Mrs. Tuck, Mrs. Goodwin and Mrs. Boynton.

In 1882 Christian Devries formed a partnership with Mrs. Minnie Vogeler to carry on the business of manufacturing and selling proprietary medicines, among which was St. Jacob's Oil. In this partnership the members of the firm of William Devries & Company acquired a three-fifths interest in the profits, the other two-fifths being the property of Mrs. Vogeler.

The interest of the members of the firm of William Devries & Company in the profits of the Charles A. Vogeler Company being in the same proportion as their shares in the

firm of William Devries·& Company, that is to say, thirty per cent to William R. Devries, thirty per cent to Christian Devries, and ten per cent each to Henry A. Devries, Mrs. Tuck, Mrs. Goodwin, and Mrs. Boynton. Christian Devries was the general managing partner in the Vogeler Company, which did a large and profitable business for a number of years, but finally became embarrassed and made a deed of trust for the benefit of creditors on the 18th day of December, 1899.

The firm of William Devries & Company ceased to do business in 1884, at which time the testimony shows it to have been insolvent.

The record shows that the children of William Devries had the most implicit confidence in the integrity and business capacity of Christian Devries. He was a man of large and varied business experience, and they looked to him for guidance and advice in business matters. Mrs. Goodwin in her testimony said: "We look to Mr. Christian Devries for everything, and consulted him about the most minute details of our living," and to the same effect is the testimony of Mrs. Tuck.

Upon the failure of the Vogeler Company there was found upon its books the account which is the subject of this suit of loans and advances made for the support and maintenance of Samuel K. George Devries, and it was also discovered that practically the whole estate of the lunatic, except the small portion thereof mentioned in the bill had been loaned by Chrstian Devries, as trustee; without authority, to the firm of William Devries & Company, and had been lost, or had been applied by him to the payment of the debts of the firm.

This suit was not brought until more than three years after the failure of the Vogeler Company, and not until after the death of William R. Devries, who would have been a most important witness as to all the transactions in connection with the contract sought to be enforced in this case.

We will now state such material allegations of the bill as may be necessary to a proper disposition of the case. It alleges the appointment and qualification of the plaintiffs as the

trustees of the Vogeler Company; that it became the duty of the plaintiffs under their appointment to collect and reduce to money all debts due to the Vogeler Company; it alleges the proceedings by which Samuel K. George Devries was adjudged to be a lunatic, and the appointment and qualification of Christian Devries and Henry A. Devries as committee and trustees; that said committee and trustees maintained and supported said lunatic at an asylum for the insane from 1877 until 1887, during which period they paid the necessary and reasonable expenses of his maintenance and clothing; that the estate of the lunatic consisted in a large part of his interest in the estate of his deceased father.

It then alleges "that the *expenses* so incurred and paid by said committee and trustees, during the period aforesaid, exhausted the estate of said lunatic in the hands of said trustees," and that about the year 1887 the only estate belonging to said lunatic was his undivided one-sixth interest in the "Pill Box Farm," and in the 28 shares of the capital stock of the Peabody Heights Company, both of which properties were unproductive, but that neither of said properties could be sold without great loss and injury to the best interests of the lunatic. "That under these circumstances it was impossible for said trustees to maintain and provide for said lunatic out of his own estate, or by a sale thereof in the usual course to provide sufficient means to maintain him except by the application of the principal of the proceeds of any such sale, or pledge, in consequence whereof it was apparent that the entire estate of said lunatic would soon be exhausted, and that said lunatic would be left without any means of support, and dependent upon public or private charity;" that as the best and most available means of preserving and protecting the estate and property of said lunatic, and at the same time of furnishing the present means of providing for his reasonable and necessary wants and comforts, and of keeping and maintaining said lunatic in the manner best adapted to his welfare and interest, the contract which forms the basis of this suit was entered into.

That contract is stated in the bill in the following words:

"Said trustees in the discharge of the duties of their office, entered into an arrangement with the said Charles A. Vogeler Company, in which company the defendants were all largely interested, whereby the said Vogeler Company undertook and agreed to advance and loan to the said lunatic, and to pay to the said trustees for his use and benefit, from time to time, as and when the same might be required for the needs of said lunatic such sum or sums of money, as might be required for the maintenance of said lunatic and for providing him with reasonable necessaries and comforts, and to this end to pay over such sum or sums to said trustees to be so expended as aforesaid, and at such times and places as the said trustees should require.

"And in consideration thereof, said trustees promised and agreed on behalf of said lunatic to repay any and all sums so advanced by said Charles A. Vogeler Company for the purpose aforesaid, with interest on said several sums from the date of the loan thereof, whenever and as soon as said trustees should determine that the principal of said lunatic's estate as aforesaid could be sold and disposed of without loss or injury to the best interest of said lunatic. It being understood that the money so loaned and advanced as aforesaid should be paid out of the proceeds of the sale of said estate, and that the sale thereof should be made only when, in the judgment of said trustees, a sale would be to the best interest of said lunatic. And it being further understood and agreed that at the proper time, the said trustees would report the facts and circumstances hereinbefore set out to the Court having jurisdiction, and that an order should be passed ratifying and confirming said contract and agreement, and authorizing and empowering said trustees to give full force and effect thereto."

The bill then alleges that the Vogeler Company, in pursuance of said contract and agreement, advanced to said trustees for the use of said lunatic, the sum of money sought to be recovered in this suit; that said contract was greatly to the advantage of said lunatic, and "that unless the said Charles A. Vogeler Company had consented to enter into said agree-

ment, and to supply, in pursuance thereof, the money neces-
sary for the maintenance of said lunatic, said trustees would
have been compelled to sell and dispose of the only estate and
property possessed by said lunatic, at a ruinous sacrifice, and
said lunatic would have long since been left without resources
or estate of any kind, thereby of necessity becoming a charge
upon the public or private charity.

"That by virtue of said agreement, said trustees were enabled
not only to continue to provide for the needs of said lunatic, but
to preserve his said estate and property until the same should
increase in value, to the great benefit and advantage of said
lunatic."

It is to be observed that the allegations of the bill are so
framed as to induce the Court to believe that there was an
urgent necessity for making the contract, and that the trus-
tees of the lunatic were governed by what they considered to
be his best interests.

But from what we have said it will appear that the bill omits
important and controlling facts and circumstances which
should have been brought to the attention of the Court, and
which were within the knowledge of Christian Devries, from
whom it is fair to presume the plaintiffs derived the informa-
tion upon which the bill was filed. It omits to state the ex-
tent of the lunatic's estate which came into the hands of his
trustees, and which, as we have shown, was quite large. It
fails to state that the greater portion of this estate was lost by
the unwarranted act of Christian Devries.

It makes no mention of the fact that at the time the alleged
contract was made there were funds on deposit in the savings
bank belonging to the lunatic approximating one thousand
dollars, and that Christian Devries was indebted to the trust
estate, at the time the alleged contract was made, to the ex-
tent of $3,975 money loaned, and which the evidence shows
he was amply able to pay.

We need not multiply authorities to show that in cases for
specific performance of contracts the plaintiff must establish
the very contract set up in his bill, and where he seeks to

charge real or personal estate with the payment of money expended under the contract, he must show that the contract was entered into with reference to said property, and that the money was advanced upon the faith of the pledge of the property for its repayment.

The agreement to be enforced must be certain and defined, and proved by clear and satisfactory evidence, otherwise the Court will refuse its specific execution.

It was said in *Semmes* v. *Worthington*, 38 Md. 299, that "in all cases for specific performance the contract must be accurately stated in the bill, and the proof must in every essential particular correspond with the contract thus set out."

The general principles by which the Court is guided upon applications of this kind were stated with clearness and accuracy by SCHMUCKER, J., in *Horner* v. *Woodland*, 88 Md. 512, as follows: "Specific performance is not a matter of right in the litigant, but is one of sound judicial discretion controlled by established principles of equity, and it will be granted, or withheld by the Court upon a consideration of all the circumstances of each particular case. The contract sought to be enforced must be certain and definite in its terms, and must be so clearly proven as to satisfy the Court that it constitutes the actual agreement between the parties. If any of these ingredients are wanting the specific performance will not be decreed."

In order to sustain the bill the Court must be satisfied.

*First.* That the contract alleged was actually made.

*Second.* That, if made, it was one which the Court would have authorized, or approved at the time had it been in possession of all the facts and circumstances.

*Third.* That the money sought to be recovered was advanced upon the faith of the contract.

The proof of the contract rests upon the testimony of Christian Devries.

He was the only witness called by the plaintiffs. It is a singular circumstance that of all the persons now living, who had been connected with the firm of William Devries & Com-

pany, and with the Vogeler Company, that he alone appears to be the only person who had knowledge of the making of the contract. None of the other witnesses knew, or ever heard of any such contract until the institution of this suit.

In his testimony he states that William R. Devries, who is now deceased, represented the interests of his brothers and sisters in the firm of William Devries & Company, and he seeks to convey the impression that he believed they had knowledge not only of the contract, but of the investment of the lunatic's funds in the firm of Devries & Company.

It is difficult to credit this testimony in view of the great weight of evidence that he, and not William R. Devries, was their representative in all business matters. Mrs. Goodwin testified that she looked to Christian Devries for everything, and Mrs. Tuck said: "I never went to Mr. William R. Devries in my life for anything of that kind, and Christian Devries knows that he, Christian Devries, made every arrangement for us. He was our representative." And Mrs. Boynton testified that William R. Devries "never represented us in anything whatever."

As to his statement that he believed that the family of William Devries had knowledge of the investment and loss of the moneys of the lunatic, the evidence is convincing that he studiously concealed the loss from them, and misled them to the very last. Mrs. Goodwin says that they "believed that everything was all right, and that he made everything as clear as possible for us, and that we were made to think that we were people in the most comfortable circumstances."

In the testimony of Mrs. Tuck it appears she had an interview with Christian Devries as late as June, 1899, in which she asked him about the lunatic's estate, at which time he told her that his estate was intact. In January, 1900, after the failure of the Vogeler Company, she had another interview with him in the course of which he told her "that George's money was all gone." "I reproached him," she says, "with having deceived us, and his reply was, "if I had told you the real condition of affairs you would have changed your way of

living, and that would have affected the credit, and the crash would have come sooner than it did."

We will now examine the testimony of Christian Devries upon which the plaintiffs rely to support the contract. He has given three distinct versions of this contract.

After referring to the dissolution of the last firm of William Devries & Company, and the application of the entire assets of the firm, including the lunatic's money, to the payment of its debts, he stated that "there was then nothing to pay the debt due and owing to the estate of the lunatic," and that the attention of William R. Devries was called to that fact. "As soon as we had arrived at that point, when we had ascertained the condition of the firm's affairs about the interest of the lunatic as he (William R. Devries) was largely overdrawn in the firm of William Devries & Company, as well as his sister, Mrs. Goodwin, and as they both had an interest in the firm of Charles A. Vogeler Company which at that time was a very profitable business, *that the interest of the two mentioned would reimburse the trustees of the estate of Samuel K. George Devries.*"

It was apparent that this statement did not prove the contract and, therefore, the counsel for the plaintiffs propounded this question: "Now, Mr. Devries in this situation, being without, as you testify, any income to support the lunatic, just recount what measures were taken and what led up to those measures to continue to support him?" To which the witness replied that he had already stated that arrangement in the testimony we have quoted.

Counsel then said: "*Well, I want you to get that thoroughly straightened out.*" Whereupon the witness answered as follows: "William R. Devries, who had charge of the finances of William Devries & Company, was a member of that firm, stated to me that he thought the simplest way to provide funds for the lunatic was to borrow the money from the Charles A. Vogeler Company, and if there were funds sufficient coming from that firm, collected hereafter, the Charles A. Vogeler Company could be reimbursed, and if not, his interest in the two pieces of property—the farm in Baltimore

County and the Peabody Heights Company would be suffi-
cient, and as he and his sister had largely overdrawn their ac-
counts in the firm of William Devries & Company, what they
paid into that firm would reimburse the trustees for any
money advanced by the Charles A. Vogeler Company."

Under these arrangements it appears that the primary
source from which the money advanced by the Vogeler Com-
pany was to be returned by payments made by William R.
Devries and Mrs. Goodwin out of their interest in future col-
lections made on account of the firm of William Devries &
Company.    That Christian Devries believed that these collec-
tions would be ample to repay the amounts advanced is quite
clear from his testimony.

There was no attempt made to prove that there was any
understanding to report the contract, or arrangement whatever
it might have been, to the Court for its ratification as alleged
in the bill.

The two accounts already given being insufficient to estab-
lish a lien against the real and personal estate of the lunatic
the witness was afterwards, at a subsequent sitting, asked this
leading question : "Do I understand you to mean that any
promise or undertaking on the part of William R. Devries, or
on the part of his sister, Mrs. Goodwin, constituted any part
of the arrangement or consideration of the loan made to you
as trustees?"    To this question he replied that he looked en-
tirely to the interest of the lunatic in his father's estate for the
payment of the advances, and that was the *sole consideration*
which induced the loan.

This evidence is utterly inconsistent with his previous tes-
timony.

It is not pretended that his co-trustee had any knowledge
of the making of the alleged contract, and we are satisfied
that he was never aware of the fact that any such contract was
claimed to have been made until after the institution of this
suit.

Henry A. Devries, his co-trustee, testified that after the fail-
ure of the Vogeler Company, Christian Devries told him that

"he had lost George's money, and that there was an account on the Vogeler Company's books against him, and when the time came he would go on the stand and testify that he had no right whatever to advance that money."

The attention of Christian Devries was called to this testimony and he did not deny it.

We are of opinion, upon a careful examination of the record, that the contract alleged in the bill is not proved.

But, if it be conceded that it was made, it would not have received the sanction of the Court had the trustees made a full and candid disclosure of all the facts and circumstances connected with their management of the trust, and of its exact condition at the time.

The order appealed from will, therefore, be affirmed.

> *Order affirmed with costs to the appellees.*

(Decided December 7th, 1905.)